IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Criminal No. **3:04-CR-0036-L** |
| | § | |
| **EMMANUEL UKO AKPAN,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Emmanuel Uko Akpan's Motion to Withdraw Guilty Plea, filed October 18, 2004. After consideration of the motion, Defendant's brief, response, testimony and exhibits introduced at the hearing on February 7-8, 2005, record, and applicable authority, the court **denies** Defendant Emmanuel Uko Akpan's Motion to Withdraw Guilty Plea.

### I. Factual Background

On February 3, 2004, the grand jury indicted Defendant Emmanuel Uko Akpan ("Defendant" or "Akpan") on a health care fraud offense, a violation of 18 U.S.C. §§ 1347, 24(b), and 2, and on four counts of engaging in monetary transactions in property derived from specified unlawful activity, violations of 18 U.S.C. § 1957(a). On April 16, 2004, Akpan signed a plea agreement in which he admitted that his "plea of guilty is freely and voluntarily made and is not the result of force or threats, or of promises apart from those set forth in this plea agreement." Plea Agreement ¶ 10. Akpan also signed a factual resume on April 16, 2004, in which he admitted that he committed the essential elements for Count 1 of the Indictment, namely, aiding and abetting in a scheme and artifice to commit health care fraud, in violation of 18 U.S.C. §§ 1347, 24(b), and 2. He also

**Memorandum Opinion and Order - Page 1**

admitted that he committed the essential elements of Count 4 of the Indictment, namely, engaging in a monetary transaction in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1957(a).[1] On May 17, 2004, Akpan pleaded guilty to Counts 1 and 4, and admitted in open court that he committed the essential elements of the offenses set forth in Counts 1 and 4 of the Indictment. At the conclusion of the rearraignment hearing on May 17, 2004, the court found Akpan guilty of the offenses charged in Counts 1 and 4 of the Indictment.

Akpan seeks to withdraw his plea of guilty, as he contends that he was coerced into signing the factual resume and plea agreement by his then-attorney Mr. Sam Ogan ("Ogan"). He also contends that he requested Ogan to file a motion to withdraw his plea of guilty but Ogan refused.

## II. Standard for Withdrawal of Guilty Plea

Prior to sentencing, the court may use its discretion to grant a motion to withdraw a guilty plea if the defendant presents a "fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B); *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001). There is no absolute right to withdraw a guilty plea, and the defendant bears the burden of establishing a fair and just reason for withdrawal. *United States v. Brewster*, 137 F.3d 853, 857-58 (5th Cir. 1998). When ruling on the motion, the court should consider whether: (1) the defendant asserted his innocence; (2) withdrawal would prejudice the government; (3) the defendant delayed in filing the withdrawal motion; (4) withdrawal would inconvenience the court; (5) adequate assistance of counsel was available; (6) the plea was knowing and voluntary; and (7) withdrawal would waste judicial

---

[1] The essential elements are those factual matters which the government must prove by competent evidence beyond a reasonable doubt to obtain a conviction.

**Memorandum Opinion and Order - Page 2**

resources. *United States v. Mendoza-Mata*, 322 F.3d 829, 834 (5th Cir. 2003) (citing *United States v. Carr*, 740 F.2d 339, 343-44 (5th Cir. 1984)).[2]

The court need not make a finding as to each *Carr* factor, as it makes its determination based on the totality of the circumstances. *United States* v. *Powell*, 354 F.3d 362, 370-71 (5th Cir. 2003); *Brewster*, 137 F.3d at 858. Moreover, a defendant's assertion of conclusory allegations does not warrant withdrawal of a plea of guilty, at least where such allegations are clearly refuted by the record. *United States v. Bounds*, 943 F.2d 541, 543 (5th Cir. 1991).

### III. Analysis

The court has considered each *Carr* factor and, although not required, made individualized findings as to each factor. Based upon a totality of the circumstances, the court finds that Akpan fails to establish a fair and just reason why his guilty plea should be withdrawn. Accordingly, the court, for the reasons herein stated, will deny Akpan's motion to withdraw guilty plea.

#### A. Knowing and Voluntary Plea of Guilty

Akpan contends that the guilty plea he entered at his rearraignment was not knowing and voluntary because of his prior "[c]ounsel's errors and deficiencies with regard to the factual issues presented in this case." For a plea to be knowing and voluntary, a "defendant must be advised of and understand the consequences of the [guilty] plea." *United States v. Gaitan*, 954 F.2d 1005, 1011 (5th Cir. 1992) (citing *United States v. Pearson*, 910 F.2d 221, 223 (5th Cir. 1990)). The consequences of a guilty plea, with respect to sentencing, "mean only that the defendant must know the maximum prison term and fine for the offense charged." *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990) (citations and quotations omitted). This court specifically informed Akpan, as

---

[2]This court refers to the matters that it must consider in determining whether to allow the withdrawal of a guilty plea as the *Carr* factors.

**Memorandum Opinion and Order - Page 3**

the record establishes, of the maximum statutory sentence (ten years) and fine ($250,000, or twice the monetary gain to Defendant Akpan or loss to the victim, whichever is greater) that he could receive for the offenses to which he pleaded guilty. The court also inquired whether Akpan and his then-counsel had discussed the Sentencing Guidelines' range of punishment, and he answered that they had discussed the possible guideline range, that is, the sentence he could receive under the Sentencing Guidelines. Moreover, the court informed Akpan of certain rights that he would lose (right to vote, right to serve on a jury, right to hold public office, and right to possess a firearm) if the court accepted his plea and adjudged him guilty of the felonies to which he intended to plead guilty. Akpan stated he understood that he would lose these rights.

Further evidence in the record establishes that Akpan was aware of the consequences of his plea. The plea agreement he voluntarily signed correctly states the maximum statutory term of imprisonment and fine. *See* Plea Agreement 1-2. Prior to accepting his plea, the court informed Akpan about these statutory maximums. Thereafter, Akpan acknowledged that he realized what the possible punishment entailed if he entered a plea of guilty. He also stated that he understood the essential elements of a violation of 18 U.S.C. §§ 1347, 24(b), and 2, and a violation of 18 U.S.C. § 1957(a) and then admitted to committing each. In addition, he testified unequivocally that the facts set forth in the factual resume were true and correct. Finally, Akpan confirmed his understanding that, by pleading guilty, he would be adjudged guilty of the offenses charged in the Counts 1 and 4 of the Indictment and waive his right to appeal or otherwise challenge his sentence, except in the limited circumstances set forth in the plea agreement. Akpan made these acknowledgments under oath in open court, and each carries a strong presumption of verity. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Lampazianie*, 251 F.3d at 524.

**Memorandum Opinion and Order - Page 4**

Finally, the court asked whether the plea of guilty was voluntary and of Akpan's own free will, and whether Akpan was pleading guilty because he was in fact guilty. Akpan answered these questions "yes" under oath. The court also inquired of Akpan whether anyone had threatened him or attempted to force him to plead guilty, and he answered "no." With respect to the involuntariness of his plea, nothing comes even marginally close to establishing that Akpan's plea was "the product of . . . misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment." *Blackledge*, 431 U.S. at 75.

Further, the court listened carefully to the testimony of Akpan and Ogan. After careful observation of the demeanor of each, their candor, and what is at stake for each, the court determines that Ogan was the more credible witness. Moreover, from the record, the court is convinced that Akpan's *true* protests of innocence came some time after the presentence report was issued in early July 2004. The record supports that Akpan wanted a guarantee or assurance from Ogan about the sentence he would receive – an assurance that Ogan could not give him. The record also reflects that Akpan wanted some assurance or guarantee of the result if the case proceeded to trial. Again, neither Ogan nor any other attorney can guarantee or promise a client that a specific result will occur.

The court is aware that plea negotiations and the overall process can be quite intense, and this is not at all unusual. The record reveals that there was considerable "to and fro" between Ogan and Akpan; however, taking into account the entire record and the testimony at the hearing, the court is convinced that the ultimate decision by Akpan to plead guilty was knowing and voluntary. Mr. Akpan is a quite strong-willed individual and is *not* one who will let someone convince him to do

anything he does not want to do. This aspect of Akpan's personality was observed by the court on several occasions during the hearing.

At one point during the hearing, the court asked Akpan what threats were made by Ogan, and he responded that Ogan told him that he was "going to end up like Mandela doing a lot of time in prison." Akpan believed that this statement was threatening because it meant that he would not see his children "grow up" while he was serving a long prison term like Nelson Mandela. Akpan further believed that the reference to Mandela, a civil rights activist in South Africa, was a threat because Mandela was "locked up" for "many years because he stood up for what was right."

Ogan explains that during a spirited discussion he told Akpan that he "could sit in jail like Nelson Mandela did and serve his sentence." This exchange took place when Ogan was explaining to Akpan various courses of action he could take regarding matters relating to his guilty plea. The reference to Nelson Mandela in light of his unjust imprisonment was not the best analogy to use and is certainly no cause for approbation; however, the court does not believe that the statement constitutes a threat or coercion on Ogan's part. It was a frank statement that if Akpan chose not to plead guilty and not to cooperate with the government, he ran the risk of staying in jail pending trial, losing at trial, and ultimately serving a long prison sentence. The statements by counsel merely reflected the reality of what could happen, depending on what course of action Akpan elected to pursue. The reference to Mandela was unfortunate but not coercive or threatening.

For all these reasons, it is without cavil that Akpan voluntarily and knowingly pleaded guilty and was fully aware of the consequences of his guilty plea. For this reason, the "knowing and voluntary" factor strongly weighs against allowing Akpan to withdraw his plea of guilty.

### B. Delay and Assertion of Innocence

The first time Akpan asserted his innocence to the court after his plea of guilty was on October 18, 2004, which was five months after his plea of guilty on May 17, 2004. He wrote a letter to Ogan on September 24, 2004, requesting Ogan to move to withdraw his guilty plea. Ogan responded by letter, dated September 29, 2004, and stated that he would not file such a motion and that Akpan could seek another attorney to represent him if he chose to do so. Sentencing in this case was originally set for September 7, 2004, but was reset to October 18, 2004.

The "rationale for allowing a defendant to withdraw a guilty plea is to permit [him] to undo a plea that was unknowingly made at the time it was entered." *Carr*, 740 F.3d at 345 (citing *Everett v. United States*, 336 F.2d 979, 984 (D.C. Cir. 1964)). The purpose is not to enable a defendant "to make a *tactical decision* to enter a plea, *wait several weeks*, and then obtain a withdrawal if [he] believes that [he] made a bad choice in pleading guilty." *Id*. (emphasis added). The court in *Carr* found a defendant's motion to withdraw to be "not promptly filed" when the defendant filed a motion 22 days after entering his guilty plea. *See Carr*, 740 F.2d at 345. Moreover, the court in *Brewster* denied a defendant's motion to withdraw his plea of guilty where the defendant sought to withdraw three months after his plea. *See Brewster*, 137 F.3d at 858. As indicated before, the court believes that Akpan's desire to withdraw was prompted after he had seen the presentence report in this case and when his lawyer could not assure him of the sentence he would receive. In this case, Akpan waited five months (150 days) to withdraw his guilty plea. Based on the facts and applicable law, these two factors weigh against allowing him to withdraw his guilty plea.

### C. Prejudice to the Government

Akpan asserts that no prejudice to the government would occur if the court were to allow him to withdraw his guilty plea. The government presented argument that it would be prejudiced if he is allowed to withdraw. The court disagrees. The government has not presented any evidence that it would be legally prejudiced in prosecuting this case, that is, that witnesses have disappeared or are no longer available, or that documentary evidence is no longer available. In other words, the government could effectively prosecute this case and present it to a jury for determination. Accordingly, this factor weighs in favor of allowing Akpan to withdraw his guilty plea.

### D. Ineffective Assistance of Counsel

Many of the court's findings and observations in section III(A) are equally applicable to this factor. As the court previously observed, there is ample evidence in the record that Akpan wanted Ogan to guarantee or promise a certain outcome if the case proceeded to trial and a specific sentence if he pleaded guilty. Ogan was in no position to do this. At his rearraignment, the court specifically informed Akpan that neither the court nor his attorney would be able to determine the sentence yielded by the Sentencing Guidelines until the presentence report had been filed and the parties had an opportunity to object to the facts reported by the probation office and the recommendation made by the probation office regarding the application of the Sentencing Guidelines. Akpan testified that he understood all of this, and understood that no one could predict in advance what his sentence would be. Finally, the court inquired whether Akpan was "fully satisfied" with his attorney and the advice and representation provided to him by his attorney, and he answered, "Yes, Your Honor."

The problem with Akpan's argument regarding his prior counsel is that he totally overlooks his repeated admissions regarding his conduct and the role he played in the commission of the offenses to which he pleaded guilty. Akpan admitted his criminal conduct regarding the two offenses to which he pleaded guilty in the plea agreement, in the factual resume, and in the plea hearing held before the court on May 17, 2004. Further, Akpan signed the plea agreement and factual resume. Although he had ample opportunity to inform the court that his plea was "forced" and to express dissatisfaction with his counsel, he did not do so when the court took his plea.

The court observed Akpan for approximately thirty minutes at his rearraignment, and at no time did he indicate or state that he was reluctant or uncomfortable about pleading guilty. He did appear embarrassed and a bit nervous at the proceeding, but such is the case with the majority of persons who enter a plea of guilty. His answers were direct and without hesitation. He fully understood the questions asked and did *not* ask the court to explain any questions.

As previously stated, the court is convinced that Akpan's plea was knowing and voluntary. The court is further convinced that Akpan was dissatisfied with the sentence he might receive if the court adopted the presentence report, and this is when he really began to become disenchanted with Ogan. Ogan refused to provide guarantees as to the sentence he might receive, and his attorney declined to file a motion for Akpan to withdraw his guilty plea. Moreover, Akpan was concerned that the United States Attorney had not filed a motion on his behalf for substantial assistance pursuant to section 5K1.1 of the United States Sentencing Guidelines.

In light of *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guidelines are no longer mandatory; they are advisory only. At sentencing, Akpan will have an opportunity to address the Sentencing Guidelines and the sentencing factors set forth in 18 U.S.C. § 3553(a). A sentencing

judge may not presume that a guidelines range is reasonable, *Gall v. United States*, 128 S.Ct. 586, 596-97 (2007), and must consider each of the sentencing factors set forth in 18 U.S.C. § 3553(a). *Id.* at 597. Akpan will have an opportunity to present evidence of any mitigating factors and to argue why the court should impose a sentence outside the applicable range called for under the Sentencing Guidelines.

Finally, the court determines that Akpan has not shown that his prior "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). From the court's perspective, adequate assistance from counsel was available during the time that Akpan's prior counsel represented him, and Akpan received effective counsel from his prior attorney.[3] For all reasons stated herein, this factor weighs against allowing Akpan to withdraw his guilty plea.

### E. Substantial Inconvenience to the Court and Waste of Judicial Resources

With respect to whether the withdrawal of the guilty plea would substantially inconvenience the court or would waste judicial resources, it is axiomatic that additional time would be expended if the court were to allow Akpan to withdraw his guilty plea and allow the matter to proceed to trial; however, these factors are of no moment in this case. The court does not base this or any of its decisions on inconvenience or the amount of time it takes to decide constitutional issues and matters that relate to one's guilt or innocence, as it expends whatever time is necessary to reach a just result. Put another way, these two factors do not negatively affect the court's consideration of Defendant's motion. These factors are neutral and weigh in favor of neither the government nor Mr. Akpan. The

---

[3]The record fully documents the meetings and exchanges between Akpan and Ogan when they met, and the court finds it unnecessary to repeat here what transpired.

**Memorandum Opinion and Order - Page 10**

court's decision to deny Akpan's motion is based on the overwhelming strength of the factors that do not weigh in favor of withdrawal of the guilty plea.

   **IV. Conclusion**

For the reasons stated herein, the court determines that the totality of circumstances does not establish a fair and just reason for allowing Akpan to withdraw his guilty plea. Accordingly, the court **denies** Defendant's Motion to Withdraw Guilty Plea. The court **will issue** a new sentencing schedule by separate order.

**It is so ordered** this 5th day of December, 2008.

*(signed)* Sam A. Lindsay
United States District Judge